All right. Please call the next case for argument. 20-1343 from the Southern District of Iowa. United States v. Julia Hernandez. May I please the court? Hold on just a second. Ms. Herrera, you may leave your camera on if you wish. We like to have the microphone muted, but if you leave the camera on, then we'll know that you're there. And Mr. Cole, the court appreciates your willingness to accept the appointment under the Criminal Justice Act in this case. And you may proceed with your argument. Thank you, Your Honor. My name is Rocky Cole. I represent the appellant, Julia Lagunas Hernandez. This is a classic drug courier case as presented by the government. The facts and evidence that were presented at trial were that of the defendant, Julia Lagunas Hernandez, was essentially on a first time trip with an experienced mentor named Carlos Medrano. In terms of the way the cross examination was developed throughout the course of trial, the theory of the defense was that the government had not established actual knowledge that Ms. Lagunas Hernandez had of the nature of the substance. And that lack of knowledge was not was not shown by what the government had presented during trial. So during closing argument, the defense is allowed to make interpretations of the evidence that either is presented or is not presented. The key witness here was Carlos Medrano. There was no other witness that was presented by the United States that directly implicated knowledge on the part of Ms. Lagunas Hernandez. He was the linchpin of this case. What he did testify to on cross examination, and I highlight this in the brief. If you look through transcript 216 through 226, the cross examination, he confirmed that at no time during any of the planning of any drugs ever mentioned. He confirmed that this was Ms. Lagunas Hernandez's first time on a trip. He confirmed that he never discussed methamphetamine with her on the train. He confirmed that there was no actual physical showing of the methamphetamine until way to the time they got to the hotel in in in in in Grimes. And so based upon that record, we absolutely had a legitimate argument to make that they hadn't met their case. That's what any defense lawyer should do is to remind them of what the government's burden of proof was and the evidence that they didn't hear. That's absolutely fair, given the record in this case. And I pointed out that the government did not present the owner of the restaurant in California where these closed planning sessions occurred. And as a result, they had not met their burden. Now, as this course knows in drug courier cases, they're certainly able to rely on if they seek an instruction, a deliberate or deliberate or willful ignorance theory. That was not sought. That was not argued. The case was tried as an actual knowledge case. So we get to closing argument. And one of the first things that the government does in its own first opening or closing statement is they point out that, quote, I haven't presented any evidence to support my theory. Well, I don't have any duty to present evidence. I made an interpretation based upon the record that was present, which was fair, which was a naive waitress that was offered to go on a business trip, which was unrebutted, by the way. And that essentially what the argument was, is that Carlos Medrano, who had also testified that all of his previous trips had been by himself, that he had used women's clothing as a typical means of transport in case he got caught. And so what was presented to the jury was absolutely based upon the record, not some wild theory or some wild hypothetical as to what they should do. And the government faults me for not presenting evidence. Well, that essentially is saying I failed to carry my burden. Why did I have to do that? I made an argument based upon interpretation on the evidence that was presented. And then in rebuttal, essentially, the government basically suggests that I'm tricking the jury. They said that I'm trying to distract. Now, the term distract is is is a loaded term when it comes at rebuttal. And of course, this is the problem the court had in the United States versus Holmes, the smoke and mirrors. Why is that so difficult? Because it's one thing to say it would have been perfectly appropriate for the government to say is that, you know, these issues are raised. But let me show you the facts and the evidence that you can focus on. But when you suggest that one that I want to distract them, that I'm trying to hide something and then you couple that with repeated and rhythmic repetition of how I want them to forget the evidence, it does call into question that I'm somehow trying to trick the jury. And that absolutely, especially at the level of rebuttal. And this is something I think that Judge Maloy pointed out in Holmes is that there's no opportunity for me to respond to that. Now, as I indicate, the it was not objected to during closing statements. I mean, as the court knows, in closing statements, that's always sort of an issue in terms of breaking up the rhythm of opposing counsel. It is subject to plain air review. But this this was not a case of overwhelming evidence, Your Honor. There was no admissions on the part of the defendant. There was no direct other testimony that either from this restaurant owner in California or anyone else that she knew. There were no admissions. They point to some ambiguous text messages in terms of the things. But as I pointed out during my own closing, that had she talked about ice or drugs and she's having a conversation with her spouse, she would refer to them as drugs because she didn't know that she was going to give that information up. And so it was a deliberate indifference type case. Right. And that was not sought. And that also gets into. And so, again, I think in terms of us being able to have an argument, that was a legitimate argument. And I think it was really similar. I would just quickly note that it was not at all similar to the United States versus Smith case at the court that the United States cited in its supplemental 28 J letter. That case, the lawyer accused the the officer that he lied. And so in response, the United States gets up and says the defendant called the officer a liar. That's perfectly responsive. I didn't make a wild argument that wasn't supported by the record. I made an argument that was based upon them failing to meet their burden of proof. The jury was entitled to evaluate it as such. And the jury was entitled to evaluate that free with any insulation on the part of the sovereign that I'm trying to trick, that I'm trying to distract and that I'm trying to make them forget. That is really the crux of the case. And we'd ask that the court remand on that basis in in terms of the in terms of the safety valve argument. I think it's also undisputed that of the five factors, the government agrees we met four of them. The question is how truthful she was. We point out in the brief and it's very consistent with one difference, of course, in the district court had actually found that he could qualify for safety. Well, this is a relief. So we do a reverse of that. So we have the clear air issue. But I think under these circumstances, it is clear error and that the court erred in placing too much weight on the jury's finding while ignoring the fact that she absolutely proffered to a that would have been sufficient to find willful ignorance that she had said. I knew that there was something that was illegal and that as a result of that, I didn't ask any further and that she actually said that in paragraph twenty one since exhibit twenty one. Laguna stated Maria never told her that was in the bag, but she suspected it was not something good. Laguna then stated she suspected that something illegal was in the bag. Your Honor, that's precisely the classic courier where you get a package in a plastic bag and they say carry this to California. Well, you can't say under those circumstances you didn't know that's what was provided. That was sufficient. And that should have been sufficient for purposes of the of the safety valve. And I see I've gone into my rebuttal time. So I'll reserve my remaining time. Suppose this closing argument were edited to take out the refrain that you don't like. He wants you to do he wants you to forget this, that and the next thing. And it just had a rhythmic refrain that she was the one who bought the ticket. She was the one who paid for the Uber. She was the one who carried the bag. She was the one who rented the room and so forth. Would that have been permissible in your view? I think a lot of your honor. I mean, so I think the issue is, is that's the big deal about that. He wants you to forget part, but he's making a personal. And I think that's the concern was in Holmes, your honor, is that it's perfectly appropriate to make robust arguments based upon the facts. But when you're saying that that changes the focus from the evidence to the lawyer and that's the objectionable part precisely and especially when it's coupled with that, I'm trying to distract them. I'm not trying to distract them. I'm trying to make argument based upon interpretations of the evidence. And that's precisely the concern that Judge Malloy had at home smoke and mirrors. It was exactly the type of smoke and mirrors argument that the court found objectionable. Well, we're on plain air review, you say, because you decided to. You didn't object, so it'd have to be a plain air, it would be a plain air, and I would just act for purpose of judicial economy. And obviously there can be collateral review as well, that there'd be some statement as to whether it was an appropriate comment or not. I would ask that the court make a specific finding on whether it was inappropriate or not, and then it can proceed to the prayer at plain air. But as Judge Malloy pointed out in Holmes, at the level of rebuttal, these types of comments are particularly damaging because there's no opportunity to respond. And I see I've gone over, Your Honor, so if I could have 30 seconds of rebuttal, if possible. Well, why don't we hear from Ms. Herrera first and then we'll see where we stand. If you could mute your microphone, Mr. Cole, and Ms. Herrera, you may proceed. Thank you, Your Honor. May it please the court, my name is Kristen Herrera and I'm appearing for the United States of America. I'll begin with the issue that Mr. Cole addressed in his argument, which is the improper closing argument issue. This is a plain air standard of review, as Your Honor mentioned, because defendant didn't object to these comments at trial. The closing argument in this case is distinguishable from the cases that are cited by defendant, specifically the Holmes case. Here, the argument issue wasn't an attack on the character and the ethics of opposing counsel, which was found to be objectionable in the Holmes case. Instead, the comments here were an invited response to defendant's arguments in closing and his theme throughout trial of attacking the strength of the government's case. They directly addressed defendant's suggestion, both during the evidentiary portion of the trial, as well as his closing argument that defendant thought that this was a work trip instead of a drug distribution trip. And they also directly addressed defendant's closing argument, which focused on discrediting the main cooperator in the government's case and weakening the government's evidence as a whole. Both of those are the sort of fair response to defense attacks on the government's case that have been found permissible by this court on numerous occasions. The comments that were made here are more like those found not to be plain error in the Jewell case, the Flynn case, and the Smith cases, which were all cited both in our brief and the letter we filed. And they focus on the strength of the government's case versus taking personal shots at the defendant or the defense counsel personally. Even if the statements are found to be improper, however, the statements did not affect defendant's right to a fair trial. Before you go on to that, what do you think of the suggestion by Mr. Cole that the argument really should have just been phrased in terms of the evidence about the defendant? She was the one who did this and that and so forth without this constant refrain about what the defense lawyer wanted the jury to forget. Do you think that's well taken in retrospect? In retrospect, probably, Your Honor, that it would have avoided this issue on appeal or perhaps would have avoided this issue on appeal. However, we thought it was effective to phrase it that way to the jury because it had the cadence and we wanted to remind the jury that defendant was raising these points or these attacks on the government's case. But we thought the evidence that we had presented at trial actually showed the opposite. And we wanted to focus on the strength of certain pieces of evidence in our case and remind the jury of those pieces of evidence in our case. But don't the words smoke and mirrors have a pejorative overtone? Yes, Your Honor. Personalize the character of the defense lawyer. What is the old statement about the government may high strike hard bows, but not foul ones? Why don't we characterize this as a foul vote? Your Honor, we don't think it was a foul vote. I might teach you a lesson for next time. Yes, Your Honor. Review is no penalty at all to the government if we just sweep it under the rug and say, naughty, naughty, but no, no harm. Your Honor, we we don't think that the that the comments were improper. We don't think that they were. In other words, if you were arguing this case again, if you were in a situation, you would be perfectly, perfectly comfortable in making that type of argument. Well, we, we don't think there was anything improper about it. However, when things get raised on appeal, obviously we take a second look at them and we like to... I sometimes wonder if you even read our opinions, very frankly. We do read your opinions, Your Honor, and we take them to heart. Well, it's gratifying to hear, but I have my doubts about it. You certainly could have employed a similar cadence here without referring to the defense attorney. There's a natural repetition there about the defendant being the one who paid for the Uber and carried the bag and rented the room and so forth. But just to be fair, did you use the term smoke and mirrors? I don't recall that being in this transcript, but maybe I missed it. I did not, Your Honor. And it was me who made the argument and I did not use that, use that phrase. Smoke and mirrors was in Holmes, I think, maybe. Oh, I see. That's correct. That's correct, Your Honor. Okay. Well, I, I take back my criticism then because I thought it was in this case. No, defense counsel has implied that our argument was similar to the smoke and mirrors argument in Holmes, but we didn't specifically say smoke and mirrors, Your Honor. So you'll acknowledge in making hard, striking hard blows, but not follow-ups. I would acknowledge that, Your Honor. Maybe you take pride in it, really. If you're a prosecutor, you should take pride in your work. We, we do, we try to strike hard blows, that is for sure. But we also try to follow the law. Well, I think you wanted to address whether even assuming there was impropriety in the argument, whether it resulted in prejudice. So you may proceed with that. Thank you, Your Honor. Yes, even if the comments are found to be improper, the government argues that the statements did not affect the defendant's right to a fair trial, excuse me, for several reasons. First, because defendant didn't object, the district court wasn't able to give a direct curative instruction to the government's comments. However, the court, district court did give the more general curative instruction both, well, several times during the trial. Actually, right before the parties gave closing arguments, the district court gave an instruction that the arguments were not evidence. And then there was the more formal written jury instructions that were read to the jury before they deliberated and sent back with the jury to the deliberation room that the party's closing arguments are not evidence. The government also believes that the strength of its case was incredibly strong here. There was volumes of co-conspirator text messages. We also had law enforcement testimony and two cooperators who testified at our trial. And in fact, as the district court noted in its motion denying or its order denying the motion for a new trial, the jury only deliberated for 38 minutes in this case before returning its verdicts of guilty on both counts. So the cumulative effect of the remarks the government believes was very minimal. The remarks were limited to a very brief time in the rebuttal closing and the trial spanned two days. So the government does not believe that the cumulative effect of the remarks was anything significant in this case. I wanted to address briefly the spousal privilege issue. Again, this was an issue that was not raised at trial. Defendant failed to object to the admission of the text messages he's now complaining of at any stage, either pre-trial or during the actual trial. The first time he brought it up was his motion for a new trial. So this is another plain error standard of review. There was no plain error in the admission of the text messages between defendant and R.B. for several reasons. And first, the overarching issue here is that defendant has yet to produce any evidence that a marriage between herself and R.B. even exists. And the burden rests on her to do so. And without evidence of a valid marriage, there is no marital communications privilege. And the analysis ends there. However, even if this court finds that defendant has established that a marriage exists, defendant waived that privilege. But in several ways, first, when she consented to law enforcement searching her phone, which is where the messages were contained. And then when she failed to object to the admission of the messages that were in that phone before trial or at trial. So she waived any privilege that might exist. And finally, the communications were even further not protected because R.B. was a participant in the defendant's drug trafficking activities. So the government rebutted any marital privilege that may have existed by showing there was joint criminal conduct. I believe my time is up. If there are no further questions, I ask the court to affirm the conviction and the sentence in this case. Thank you. Very well. Thank you for your argument. Mr. Cole, we'll give you two minutes for rebuttal if you'd care to. Thank you, Your Honor. In response to your question, Judge Woolman, the particular language that was used was attempt to distract was the key word that was used. And that's what I'd argued in the appellate brief that if you're saying that I'm trying to distract, that is that is a foul blow. That that is like I'm acting like I'm a magician. And then I'm also trying to get them to forget. So point one way and then get them to forget. That's exactly what a magician does. The government just admitted that the reason why they brought this up is they thought it was a very effective technique to make it about me. Now, listen, I've said she didn't say that it was effective to make it about you. She said it was effective to have a rhythmic cadence that which the several points which could have been done by reference to the facts, which I have. But are you sure that why is the phrasing as written here an attack on the defense attorney as opposed to an attack on the argument? Because they're saying that I'm trying to get their impugning me like what I was going to get at, Your Honor, is that, listen, I've served in politics and I've done federal work for 20 years. I consider myself sort of a tough guy. It's not that my feelings were hurt, but it's that it's the credibility and the sovereign's use of that. I'm trying to distract them. Lawyers don't distract. Lawyers point to evidence. And I think in terms and then they say that I didn't produce any evidence for my theory. I didn't have to. It's one thing if I offered a theory, lawyers attempt to get the jury to focus on evidence that's more favorable to their client than evidence that's less favorable to their client every day, Your Honor. And there's nothing wrong with another way of saying they try to distract the jury from looking at the unfavorable evidence and looking at the favorable evidence. It's another way, but it's the same thing with smoke and mirrors when you're saying, hey, and that's, I think, what Holmes gets to, Your Honor. If you're saying, hey, this is something that you can consider, you can focus on the facts. But when you're saying that lawyers attempting to distract you, you're diminishing that lawyer in the eyes of the jury. And that's all you have is the bond that you have with the juror. In terms of the marital privilege issue, I'd say could be resolved in one of two ways. I'd agree that the record is not well developed on that. We can either remand for a hearing to save additional work on collateral review, or it could be punted and we can preserve it for collateral review. So I think in terms of the marital privilege, I would agree that the record is not adequately developed there. But in terms of this particular issue, I think I encourage the court to go back and look at Holmes and see how closely it tracks the concerns outlined in Holmes. You can get there through the traditional techniques, Your Honor, arguing the facts. And in terms of theories, I would agree if I raise some theory that was totally unsupported by the record, well, then, of course, I think I'm inviting the air. But when they're saying that I have a burden to prove evidence when I'm talking about an interpretation not meeting the burden of proof, that's an inaccurate statement of law. And I think that requires reversal, especially at the level with Holmes, a rebuttal was the last thing the jury heard. And as the government indicated, it was effective. Very well. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course. Thank you.